UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                          :
In re:                                    :
                                          :       Case No.: 07- 13533 (MG)
          DUNMORE HOMES, INC.,            :       Chapter 11
                                          :
                              Debtor      :
------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR
TRANSFER OF VENUE TO THE EASTERN DISTRICT OF CALIFORNIA,
SACRAMENTO DIVISION**

**A P P E A R A N C E S :**

PACHUSKI STANG ZIEHL & JONES LLP
*Counsel for the Debtor and Debtor in Possession*
780 Third Avenue, 36th Floor
New York, NY 10017-2024
By:     Richard M. Pachulski
        Debra Grassgreen
        Maria A. Bove

DIANA G. ADAMS
*Office of the United States Trustee*
33 Whitehall Street
21st Floor
New York, NY 10004
By:     Richard C. Morrissey

LOWENSTEIN SANDLER, PC
*Counsel for Weyerhaeuser Realty Investors, Inc., et al:.*
1251 Avenue of the Americas
New York, NY 10020
By:     Bruce Buechler

ORRICK, HERRINGTON & SUTCLIFFE, LLP
*Counsel for IndyMac Bank:*
Old Federal Reserve Bank Building
400 Sansome Street
San Francisco, CA 94111
By:     Frederick D. Holden, Jr. (Telephonic Appearance)

PILLSBURY, WINTHROP, SHAW & PITTMAN, LLP
*Counsel for Guaranty Bank:*
1540 Broadway
New York, NY 10036
By:    Rick B. Antonoff

SEWARD & KISSEL, LLP
*Counsel for Guaranty Bank:*
One Battery Park Plaza
New York, NY 10004
By:    John R. Ashmead

KAYE SCHOLER
*Counsel for Key Bank National*:
1999 Avenue of the Stars
Suite 1700
Los Angeles, CA 90067
By:    Marc Cohen

DOWNEY BRAND
*Counsel for Teichert Construction and Cal Sierra Construction:*
555 Capitol Mall
10th Floor
Sacramento, CA 95814
By:    R. Dale Ginter (Telephonic Appearance)

HEFNER, STARK & MAROIS, LLP
*Counsel for Hemington Landscape Services:*
2150 River Plaza Drive
Suite 450
Sacramento, CA 95833
By:    Howard S. Nevins (Telephonic Appearance)

PARKINSON PHINNEY
*Counsel for SGN Construction, Inc.:*
400 Capitol Mall
11th Floor
Sacramento, CA 95814
By:    Donna T. Parkinson (Telephonic Appearance)

LAW OFFICE OF WILLIAM WEBB-FARRER
*Counsel for Mackay & Somps Civil Engineers:*
300 Montgomery Street, Suite 600
San Francisco, CA 94104
By:    Don Raub (Telephonic Appearance)

2

FRANDZEL, ROBINS, BLOOM & CSATO, L.C.
*Counsel for Affinity Bank*
6500 Wilshire Boulevard
Seventeenth Floor
Los Angeles, CA 90048
By:    Craig A. Welin (Telephonic Appearance)

MORRISON & FOERSTER, LLP
*Counsel for the Official Committee of Unsecured Creditors:*
425 Market Street
San Francisco, CA 94105-2482
By:    Adam A. Lewis
2000 Pennsylvania Avenue, NW
Washington, DC 20006-1888
By:    Alexandra Steinberg Barrage

SEWARD & KISSEL, LLP
*Counsel for Bank of New York:*
One Battery Park Plaza
New York, NY 10004
By:    John R. Ashmead

JENNINGS, HAUG & CUNNINGHAM
*Counsel for Travelers Bond:*
2800 North Central Avenue
Suite Eighteen Hundred
Phoenix, AZ 85004-1049
By:    Chad L. Schexnayder (Telephonic Appearance)

SHEPPARD MULLIN RICHTER & HAMPTON
*Counsel for Comerica Bank:*
Seventeenth Floor
Four Embarcadero Center
San Francisco, CA 94111
By:    Geraldine A. Freeman (Telephonic Appearance)

LANG, RICHERT & PATCH
*Counsel for PML Landscape:*
5200 North Palm Avenue, 4th Floor
Fresno, CA 43755
By:    Matthew W. Quall (Telephonic Appearance)

**MARTIN GLENN**
United States Bankruptcy Judge

Pending before this court is a motion by creditors seeking an order transferring venue of this chapter 11 case pursuant to 28 U.S.C. § 1412 to the Eastern District of California, Sacramento Division.  (ECF Doc. # 54.)  The original moving parties were Cal Sierra Construction Inc., Pacific Paving Co., Inc., and Valley Utility Services, Inc.  (*Id.*)  The motion was joined by other creditors[1] of Dunmore Homes, Inc. (hereinafter "Debtor"), or its non-Debtor affiliates.  The transfer venue motion has been opposed by the Debtor and two creditors, Bank of New York Trust Company, N.A. ("Bank of New York") and KeyBank National Association ("KeyBank").  (ECF Doc. # 104, 114, 117.)  For the reasons provided below, the motion to transfer venue is granted.

## BACKGROUND

The Debtor filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Southern District of New York on November 8, 2007 ("Petition Date").  Prior to its filing, the predecessor to the Debtor, Dunmore Homes, a California corporation ("Dunmore California") performed entitlement and land development work, prepared sites for homebuilding, and built single-family residential housing throughout Northern and Central California.  (ECF Doc. # 2.)  Beginning in September 2005, Dunmore California experienced declining home absorption and pricing levels and deteriorating financial performance.  In response, Dunmore California and its subsidiaries halted nearly all home construction, land development operations and sales on August 1, 2007.  (*Id.* at ¶ 14.)  Additionally, beginning in August 2007, Dunmore

---

[1]       These other moving parties are Teichert Construction, Inc., Aleco Corp., Granite Construction Co., DeSilva Gates Construction, L.P., Travelers Bond, Weyerhaeuser Realty Investors, Inc., Hemington Landscape Services, Inc., SGN Construction, Inc. and the Official Unsecured Creditors Committee.  (ECF Doc. # 66, 84, 99, 107, 109, 110, 130.)

California and the subsidiaries experienced a series of technical and non-technical defaults under many of its existing secured debt agreements.

On September 10, 2007, Dunmore California sold all of its assets to the Debtor, Dunmore Homes, Inc., a New York corporation ("Dunmore New York"), wholly owned by Michael Kane. (*Id.* at ¶ 9.)  Mr. Kane resides in California.  Dunmore California is wholly owned by Sidney B. Dunmore.  (*Id.* at ¶¶ 9, 10.)  Mr. Dunmore resides in California.  Dunmore California's assets were sold for $500.00 and the assumption of all of the company's debts and liabilities by Dunmore New York.  At the time of the sale transaction, Mr. Dunmore owed Dunmore California approximately $11.2 million.  This obligation was unsecured.  As part of the sale transaction, Mr. Dunmore signed a promissory note secured by a pledge of an anticipated personal tax refund he hopes to receive as a result of the loss upon the sale of Dunmore California to Dunmore New York.[2]  Contemporaneously with the sale, Dunmore California changed its name to DHI Development, Inc., a California corporation.  On November 8, 2007, fifty-nine days after the purchase of Dunmore California, the Debtor filed its chapter 11 petition in New York.  As of the Petition Date, the Debtor employed approximately 37 people, down from approximately 132 during the same time last year.[3]  The Debtor has no office, employees, or bank accounts in New York.  Its only presence in New York is its recent incorporation in this state.

The Debtor and its non-debtor affiliates (the "Dunmore Companies") are developing 26 communities, organized into fourteen limited liability companies and one limited partnership

---

[2]        It seems clear that the sale was designed so that Mr. Dunmore could obtain a tax refund, use it to reduce his debt to the company, and enable the company to pay down some of the debt on which Mr. Dunmore is a guarantor. Dunmore New York benefited from the transaction to the extent that the previously unsecured obligation from Mr. Dunmore became at least partially secured.

[3]        During the January 11, 2008 omnibus motion hearing, the Debtor disclosed that only seventeen employees and two independent contractors remain.

(collectively, the "Subsidiaries"), all owned (in whole or in substantial part) by the Debtor.[4]  (*Id.* at ¶ 12.)  The Dunmore Companies financed fifteen subsidiaries, representing twenty-five communities, with secured debt at the subsidiary level.  The financing has been provided by nine different lenders (or lending groups).  Many of the loans to the Subsidiaries are guaranteed by the Debtor (or the Debtor is a co-borrower).[5]  The Subsidiaries are not currently debtors but are engaged in out of court restructuring.[6]  (*Id.* at ¶ 12.)

As of September 30, 2007, the book value of the Debtor's consolidated assets was $280,592,251 and the book value of consolidated liabilities was $250,285,447.  (*Id.* at ¶ 17.)  As of the Petition Date, the Debtor's principal assets included: (a) its interests in the Subsidiaries; (b) cash on hand of approximately $119,000, (c) an option to purchase 19.8 acres of property in Northern California with an estimated value in excess of the option exercise price of $815,000, (d) the Debtor's interest in the Executive Non Qualified Excess Plan valued at approximately $1,700,000, (e) the promissory note from Mr. Dunmore, in the amount of approximately $11.2 million as of the Petition Date, secured by Mr. Dunmore's anticipated 2007 Federal tax refund, (f) 161 acres of mitigation property in Northern California, encumbered by a first lien in favor of

---

[4]      The Subsidiaries are: Dunmore Canterbury LLC; Dunmore Country Vilas, LLC; Dunmore Fullerton Ranch, LLC; Dunmore Highland, LLC; Dunmore Laguna Reserve, LLC; Dunmore Orchard LLC; Dunmore-Providence LLC; Dunmore Stone Creek, LLC; Fahrens Park LP; Dunmore Viscaya LLC; Dunmore Diamond Ridge LLC; Dunmore Croftwood LLC; Dunmore Westport, LLC; Dunmore Sycamore Ranch LLC; and Dunmore Montecito LLC.  The Debtor wholly owns all of the Subsidiaries except Dunmore Croftwood, LLC, Dunmore Diamond Ridge, LLC, Dunmore Highlands, LLC and Dunmore Viscaya, LLC, all of which are operated as joint ventures with Weyerhauser Realty Investors.  The Debtor also has an interest in the following inactive subsidiaries: Dunmore Brown Estates, LLC; Dunmore Reflections II, LLC; Dunmore Wildhawk, LLC; Fairways, LLC; Dunmore Sierra, LLC; Dunore Delano, LLC; Dunmore Wildhawk North LP; and the Dunmore Homes Statutory Trust 1.

[5]      All of Dunmore California's guarantees or obligations as co-obligor with the Subsidiaries were assumed by Dunmore New York as part of the sale.

[6]      Foreclosure proceedings are ongoing in California against several of the Subsidiaries' properties, with the earliest foreclosure possibly occurring in January 2008.  Debtor's counsel represented to the Court that the Debtor has no present intention to file additional chapter 11 cases for Subsidiaries facing imminent foreclosure, but counsel also did not completely rule out that possibility.

Sacramento Valley Farm Credit ("Stone Mitigation Property").  (*Id.* at ¶ 18.)  The Court

approved the sale of the Stone Mitigation Property for $4,360,000 on December 14, 2007.  (ECF

Doc. # 176.)  The sale closed before year-end and the proceeds were paid first to the first lien

holder, Sacramento Valley Farm Credit, and then to pay down the debtor-in-possession

financing.  (*Id.*)

The Debtor's direct liabilities consist of approximately $2 million in debt, secured by a

second lien on the assets of Dunmore Fullerton Ranch, LLC, Dunmore Highland, LLC, and

Dunmore Montecito LLC, and $20 million of junior subordinated notes that mature in 2035.  (*Id.*

at ¶ 19.)  Bank of New York is the indenture trustee for the subordinated notes.  The Debtor also

has significant indirect liabilities resulting from its obligations as guarantor or co-borrower of

secured debts of various Subsidiaries held by RBC Builder Finance; Indymac Bank F.S.B.;

Guaranty Bank; KeyBank; Wachovia Bank, N.A. ("Wachovia"); Affinity Bank; Comerica Bank;

Franklin Bank; and United Commercial Bank.  The total amount of secured debt to Subsidiaries

for which the Debtor is a guarantor or co-borrower was approximately $195 million as of the

Petition Date.  In the first instance, the security for this debt is California real property owned at

the subsidiary level.

In addition to the above debt, Travelers Casualty and Surety Company of America

("Travelers") issued payment and performance bonds ("Bonds") in favor of certain of the

Subsidiaries.  Dunmore California and Mr. Dunmore each executed a General Agreement of

Indemnity in favor of Travelers for any loss incurred in connection with the Bonds.  The Debtor

assured Dunmore California's obligations to Travelers in connection with the indemnity

agreement.  Travelers asserts a security interest in Dunmore California's property to secure the

indemnification obligation.

Pursuant to the Debtor's Amended List of Creditors Holding Thirty Largest Unsecured Claims, the indirect institutional creditors listed above are geographically dispersed in California, Texas, North Carolina,[7] and Ohio.[8]  (ECF Doc. # 115, 116.)  Bank of New York, the indenture trustee of the $20 million of subordinated notes, is the only one of the top 30 creditors in New York.  (ECF Doc. # 115.)  There is no indication about who owns the subordinated notes and where the noteholders are located.  The majority of the creditors comprising the remainder of the top thirty creditors are trade creditors located in California.  (*Id.*)  Of the thirty largest creditors shown on the Amended List, seven have joined the venue transfer motion, representing approximately $23,578,998.46 of debt, and two have opposed the motion representing $56,700,000 in debt.  (*Id.*)  In terms of the number of creditors, twenty-four of the top thirty are located in California.  (*Id.*)  It appears undisputed that the vast majority of creditors below the top thirty are trade creditors located in California.

The Moving Parties filed the change of venue motion pursuant to 28 U.S.C. § 1412 on November 26, 2007.  (ECF Doc. # 54.)  The motion was not based on allegations that the Southern District of New York was an improper venue pursuant to 28 U.S.C. § 1408[9]; rather, the motion claimed that venue should be changed based on consideration of the interests of justice and the convenience of parties.

The Moving Parties alleged that they were listed in the Debtor's schedule of top twenty unsecured creditors and that they were representative of most of the creditor classes that are California-based businesses.  (*Id.*)  The motion argues that the smaller creditors will suffer

---

[7] Wachovia is headquartered in North Carolina but the Debtor's loans are administered by Wachovia's Philadelphia, Pennsylvania office.  (ECF Doc. # 115 at ¶ 13.)

[8] KeyBank is headquartered in Ohio, but the Debtor's loans are administered in Bellevue, Washington.  (ECF Doc. # 117 at ¶ 6.)

[9] In the motion and at oral argument, the Moving Parties recognized that the incorporation of the Debtor, Dunmore New York, in New York provides a sufficient nexus to the state to confer venue.  (ECF Doc. # 54 at ¶ 23 n.2.)

substantial burden and expense participating in this case in New York whereas the large

institutional creditors located outside of California would incur no additional expense if the

proceedings were transferred.  The motion alleges that the Debtor has no other domestic business

activity or presence outside of California.  (*Id.*)  The Debtor's assets, employees, and pending

litigations, among other things, are located in California.  Dunmore New York was recently

incorporated in New York to facilitate the purchase of Dunmore California for nominal

consideration.  As already mentioned, Dunmore New York has no office, employees, assets or

bank accounts in New York.  The motion alleges that the Debtor's initial decision to file in New

York was an attempt at forum shopping as a means to limit certain creditors access to the

proceedings.  Importantly, the Unsecured Creditors Committee supports the motion to transfer

venue to the Eastern District of California.

The Debtor's opposition relies on the weight given to the Debtor's choice of venue, the

percentage of the dollar amount of debt held by creditors located outside California, the

familiarity of this Court with the facts versus the time and expense in familiarizing a new court

with the case, and the focus of the restructuring on securing financing rather than operational

issues.  The Debtor argues that the largest creditors who are the most likely to be very active in

the case are large national banks with headquarters outside of California and that the smaller

creditors, like the trade creditors, would still be able to participate telephonically and through the

electronic filing of motions.  (ECF Doc. # 114.)  The Debtor argues that its direct debts are not

principally held by California entities.  (*See id.*)  The Debtor also argues that this case is

principally about finding funding for a sale or orderly wind-down of Debtor's business and, as

such, the chapter 11 case is not going to directly impact many of the trade creditors, who are not

direct creditors of the Debtor but of the Subsidiaries.  The Subsidiaries, who are not currently in

9

bankruptcy, are still available for the creditors to proceed against in California.  (*Id.*)  Two large

creditors, KeyBank and Bank of New York, have joined the Debtors' opposition to the transfer

venue motion.  (*See* ECF Doc. # 104, 117.)  Bank of New York alleges that it is the only creditor

whose claim is against the Debtor alone with no recourse to the Subsidiaries.  (ECF Doc. # 104.)

KeyBank holds the debt of several Subsidiaries, for which the Debtor was a guarantor or co-

borrower.  (ECF Doc. # 117.)  KeyBank contends that it holds the largest amount of debt owed

by the Subsidiaries.  As a result, both argue that they represent the most significant creditor

interests and prefer New York as the venue for this case.

## DISCUSSION

### A.  Proper Venue under 28 U.S.C. §1408

28 U.S.C. §1408 states that a chapter 11 case may be commenced in the district court for

the district in which "the domicile, residence, principal place of business in the United States, or

principal assets in the United States . . . have been located for a hundred and eighty days

immediately preceding such commencement . . . ."  The statute is written in the disjunctive

making venue proper in any of the listed locations.  *In re Segno Commc'n, Inc.*, 264 B.R. 501,

505 (Bankr. N.D. Ill. 2001) (finding any of the four is jurisdictionally sufficient).  A

corporation's domicile is generally held to be its state of incorporation.  *In re B.L. of Miami, Inc.*,

294 B.R. 325, 328 (Bankr. D. Nev. 2003) (finding venue in Nevada proper because it was the

state of incorporation); 1 COLLIER ON BANKRUPTCY ¶ 4.01[2][b] (15th ed. rev. 2007).  In this

case, the Debtor, Dunmore New York, was incorporated in New York and would be considered

domiciled here.  Therefore, the venue selected by the Debtor is proper under § 1408.

### B.  Change of Venue Pursuant to § 1412

Finding venue proper under § 1408, consideration of the transfer venue motion must then

turn to the discretionary power granted courts pursuant to 28 U.S.C. § 1412.  After a case or

10

proceeding has commenced in a proper district, it can be transferred to another district court if

the court finds the transfer would be in the interest of justice or for the convenience of parties.

28 U.S.C. § 1412; *In re B.L. of Miami*, 294 B.R. at 328.  Section 1412 is worded in the

disjunctive allowing a case to be transferred under *either* the interest of justice rationale or the

convenience of parties rationale.  *Enron Corp. v. Arora* (*In re Enron Corp.*), 317 B.R. 629, 637

(Bankr. S.D.N.Y. 2004).  The decision to transfer venue is within the discretion of the court, as

evidenced by the use of the permissive "may" in § 1412.  *Id.* at 638 n.8.  A court should base its

analysis on the facts underlying each particular case.  *See id.* at 638*; Gulf States Exploration Co.*

*v. Manville Forest Prod. Corp.* (*In re Manville Forest Prod. Corp.*), 896 F.2d 1384, 1391 (2d

Cir. 1990) (review should be on individualized basis).  However, "the power to transfer a case

[or proceeding] should be exercised cautiously."  *In re Enron*, 317 B.R. at 638 (citing *In re Toxic*

*Control Technologies, Inc.*, 84 B.R. 140, 143 (Bankr. N.D. Ind. 1988)).  A debtor's selection of a

proper venue is "entitled to great weight" in the consideration of change of venue motions.  *In re*

*Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002).  As a result, "a heavy burden of proof

rests on the moving party to demonstrate that the balance of convenience clearly weighs in his

favor."  *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc.* (*In re Lionel Corp.*), 24 B.R.

141, 142 (Bankr. S.D.N.Y. 1982) (deciding motion to transfer an adversary proceeding from the

district in which the main bankruptcy case was filed).  "The party moving for change of venue

bears the burden of proof and that burden must be carried by a preponderance of the evidence."

*Manville*, 896 F.2d at 1390 (affirming bankruptcy court's refusal to transfer an adversary

proceeding); *Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co., Inc.* (*Matter of*

*Commonwealth Oil Refining Co., Inc.*), 596 F.2d 1239, 1241 (5th Cir. 1979) (*"CORCO"*).  In

considering change of venue motions, courts often look to the criteria established in two circuit

court decisions to evaluate the interests of justice and convenience of parties − *In re Manville Forest Prod. Corp.*, 896 F.2d 1384 and *CORCO*, 596 F.2d 1239.

In *CORCO*, the court affirmed the bankruptcy court's denial of a transfer motion seeking to transfer the chapter 11 cases of an oil refining company debtor and eleven of its subsidiaries from Texas to Puerto Rico. CORCO's principal office and management were located in Texas; most of its assets and creditors were located in Puerto Rico. The parties seeking the transfer to Puerto Rico argued that Puerto Rico had the greatest interest in the case because CORCO was a major supplier of petroleum products to Puerto Rico, its operations were located in Puerto Rico, and many of its creditors were located there. The Fifth Circuit rejected the argument, concluding that the bankruptcy court did not abuse its discretion in deciding to retain the case in Texas. The court concluded that the venue was proper in Texas for several reasons, including that management of all aspects of the debtor's business were handled in Texas, the debtor's problems were financial rather than operational and the people who would work to solve those financial problems or would appear in court were based in Texas. *CORCO*, 596 F.2d at 1241-48.

In *Manville*, the Second Circuit considered the benefits of the current court's familiarity with the case and facts and the lag time of the receiving court's learning curve. *In re Enron*, 274 B.R. 327, 349-50 (Bankr. S.D.N.Y. 2002) (citing *Manville*, 896 F.2d at 1391). In *Manville*, the moving party sought to transfer the venue of an adversary proceeding involving Louisiana law from New York, the district handling the main bankruptcy case, to Louisiana. *Manville*, 896 F.2d at 1387-88. The bankruptcy court that originally denied the motion found that while the convenience of the parties and witnesses favored transferring venue, the economic and efficient administration of the case weighed in favor of retaining venue of the adversary proceeding. The court held that it was inappropriate to shift the burden of the case to another court because the

bankruptcy court had already developed a substantial learning curve. *Id.* at 1391. The court also found the change of venue motion untimely. *Id.* On appeal, the Second Circuit held that the lower court had struck the appropriate balance between the economic and efficient administration of the case and the convenience of the parties. *Id.*

The interests of justice prong has been characterized as a broad and flexible standard. *In re Enron*, 274 B.R. at 343 (citing *Manville*, 896 F.2d at 1391). The court considers whether (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiff's original choice of forum should be disturbed. *In re Enron*, 317 B.R. at 638-39.

The convenience of parties prong has six factors: (i) proximity of creditors of every kind to the court; (ii) proximity of the debtor; (iii) proximity of witnesses necessary to the administration of the estate; (iv) location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary administration if liquidation should result. *In re B.L. of Miami,* 294 B.R. 325, 329 (citing *CORCO*, 596 F.2d at 1247; *In re Consol. Equity Prop., Inc.*, 136 B.R. 261, 266 (D. Nev. 1991)). The consideration given the most weight is the economic and efficient administration of the estate. *Enron*, 274 B.R. at 343. Most cases do not consider liquidation because it is illogical to focus on liquidation contingencies when the goal of the bankruptcy is reorganization. *CORCO*, 596 F.2d at 1248; *In re Enron*, 274 B.R. at 349; *In re B.L. of Miami*, 294 B.R. at 333.

Each prong identified above and its impact on the case will be discussed in turn below. The court concludes that the Moving Parties have met their burden under both the interests of justice and convenience of parties standards.

### 1. Interest of Justice

Courts evaluating the interests of justice have considered the following factors:

(1) whether transfer would promote the economic and efficient administration of the bankruptcy estate;
(2) whether the interests of judicial economy would be served by the transfer;
(3) whether the parties would be able to receive a fair trial in each of the possible venues;
(4) whether either forum has an interest in having the controversy decided within its borders;
(5) whether the enforceability of any judgment would be affected by the transfer; and
(6) whether the plaintiff's original choice of forum should be disturbed.

*In re Enron Corp.*, 317 B.R. at 638-639.  Courts also consider the impact of the learning curve if the case is transferred.  *In re Enron*, 274 B.R. at 349.  In addition, courts consider the ability of interested parties to participate in the proceedings and the additional costs that might be incurred to do so.  *In re B.L. of Miami*, 294 B.R. at 334.

Courts evaluating the economic and efficient administration of the case have looked at "the need to obtain post petition financing, the need to obtain financing to fund reorganization, and the location of the sources of such financing and the management personnel in charge of obtaining it."  *In re Enron*, 274 B.R. at 348 (citing *In re Int'l Filter Corp.*, 33 B.R. 952, 956 (Bankr. S.D.N.Y. 1983)); *CORCO*, 596 F.2d at 1247.  In this case, these factors support the transfer of venue.  Post petition financing has already been obtained from Mr. Dunmore, a California resident.  (ECF Doc. # 48, 192.)  Further financing for a purchase of assets or a wind down of the business is just as likely to come from California as New York since the Debtor's main assets are the California real estate owned by its Subsidiaries.  (ECF Doc. # 114 at ¶ 24) (stating that of the six term sheets submitted, two are from New York, three from California, and

one from Connecticut).  Anyone purchasing or financing the business in all likelihood is going to

have to conduct most of the necessary due diligence in California.  Debtor's only offices,

management and employees are located in California.  Debtor's sole shareholder resides in

California.  Debtor's counsel, while having a New York office, is based in California, and the

two lead partners from the firm in this case are based in California.  Debtor's financial advisor,

Alvarez & Marsal North America, LLC, and its investment banker, Alvarez & Marsal Securities,

LLC, are based in California and Arizona, respectively.  (ECF Doc. # 11 at Exhibits A & B.)

The location of the financial professionals retained in this case is further evidence of the ability

to secure funding or a purchaser for this company when based in a location other than New York.

Based on the above, the sources of funding are likely in California and the location of the

professionals and management personnel in charge of obtaining this funding are in California or

Arizona.  As a result, the efficient administration of this case weighs heavily in favor of transfer

to California.

   The Debtor in opposition relies on the *Enron* and *CORCO* courts' ultimate decisions to

retain venue based on the location of the financial restructuring of the debtors in those cases

rather than the physical location of their assets.  However, the Debtor's reliance on these cases is

misplaced because the assets and business models in *Enron* and *CORCO* were fundamentally

different than those involved in this case.  The majority of the Debtor's significant assets consist

of real property in residential developments in the state of California.  As stated in *Enron*,

"where a debtor's assets consist solely of real property cases have held that transfer of venue is

proper because matters concerning real property have always been of local concern and

traditionally are decided at the situs of the property."  *In re Enron*, 284 B.R. 376, 392 (Bankr.

S.D.N.Y. 2002) (abrogated on other grounds) (citing *In re Baltimore Food Sys., Inc.*, 71 B.R.

795, 803 (Bankr. D.S.C. 1986) ("[S]pecial consideration to administration at the situs of the assets where those assets consist of real property.")); *see also In re Old Delmar Corp.*, 45 B.R. 883, 884 (S.D.N.Y. 1985) (finding that venue of real property was the most capable in handling emergencies and keeping close contact with the property).  In *Enron*, the court faced the reorganization of a complex global energy conglomerate, and the sophistication of the financial markets was an essential factor in the successful financing and reorganization of the company. *See In re Enron*, 284 B.R. at 390 -91.  In *CORCO*, the court faced reorganization or sale of an oil refining company conducting business in Puerto Rico, while its executive management was primarily in Texas.  The expertise of its management and greater availability of financing in Texas were more important than the location of the physical assets or the largest number of its creditors.  *CORCO*, 596 F.2d at 1247-48.  Both *CORCO* and *Enron* emphasized that venue was most appropriate where the people who would handle the bankruptcy were located.  In this case, all of the Debtor's employees and the majority of its professionals are located in California.  In addition, Dunmore is distinguishable from *Enron* and *CORCO* because Dunmore lacks any ties to New York, other than its recent incorporation in the state and its efforts to secure financing here.  Dunmore New York has no offices or employees here, unlike *Enron*, which had an operating subsidiary in New York, and *CORCO*, which had its executive offices and management in Texas.  The Debtor currently has no ongoing operations in any state, but its predecessor in interest, Dunmore California, was a long-time California home builder with no projects or other connections with New York.  Dunmore New York's only other "connection" to New York is that the headquarters of Bank of New York, the indenture trustee of the Debtor's subordinated notes, is located here.

The next prongs to consider in the interests of justice − judicial economy and the ability to receive a fair trial in either the Southern District of New York or the Eastern District of California − are closely balanced, but judicial economy tilts slightly in favor of transfer to California.  Both courts have the capacity to handle this case and provide a fair proceeding.  However, because cases are already pending in California state courts against some of Debtor's Subsidiaries (but stayed as to the Debtor), and many issues in this case are likely to be governed by California law, judicial economy would be better served if all cases were pending in California.

In *Manville*, in affirming the denial of a transfer of an adversary proceeding, the court relied on the bankruptcy court's substantial "learning curve" and the likelihood that a transferee court would have delayed the final resolution of the bankruptcy case.  *Manville*, 896 F.2d at 1391.  The court recognized the inefficiency that can result where the main case is administered in one district by a judge who has gained familiarity with the case, but an adversary proceeding is transferred to another district to be handled by a different judge.  The transfer motion in this case has been made early in the case.  While this Court has gained some familiarity with the issues in this case by considering and ruling on First Day Motions and the motion to approve the sale of the Stone Mitigation Property, these are not likely to be the kinds of issues that require the most court time in the future.  Accepting the Debtor's argument would effectively mean that anytime a court has ruled on first day motions it should deny a subsequent transfer motion (necessarily filed after the first day) because of the learning curve a new court would have to get up to speed.  This result would eviscerate the transfer venue statute, 28 U.S.C. § 1412.  Given the Debtor's stated objective to sell all or parts of the company or its assets in an orderly wind down, the familiarity and knowledge gained by this Court is not as pivotal to the progress of the case as

it might be in more complex reorganizations such as Enron. Therefore, the learning curve is not a substantial deterrent to transferring the case.

In *CORCO*, the court emphasized the interest of the receiving venue in the outcome of the case. *CORCO*, 596 F.2d at 1248. In this case, California clearly has a greater interest in the outcome of this case for both the Debtor and the creditors. The Debtor's assets and business are in residential home building properties within California, giving California a strong interest in the impact of the disposition of those assets to the areas and communities in which they are located. California also has a greater interest than New York because the majority of the trade creditors in this case are local California businesses. In addition, several of those creditors have commenced proceedings against the Debtor or its Subsidiaries in California state courts based on California law. In *CORCO*, the court was ultimately not persuaded by Puerto Rico's interest in the outcome of the bankruptcy because the court found that the retention of the case in Texas ultimately served the interests of Puerto Rico by maintaining the bankruptcy in close proximity to the company's management that were working to provide the Debtor with needed access to capital markets and potential buyers for the underlying company. *Id.* In this case, while New York is a financial capital and could provide the funding for the Debtor's wind down, given the local nature of the assets and operations of the Debtor and the current interest expressed while the case was proceeding in New York, retaining the case in New York does not provide the same benefits relied on in *CORCO*. The potential financial investors who have expressed sufficient interest in the Debtor's properties to submit a term sheet are geographically dispersed. (*See* ECF Doc. # 114 at ¶ 21) (one company from Connecticut, two companies from New York, and three companies from California have submitted term sheets).

In *In re B.L. of Miami,* a case granting the transfer motion, the court identified the need for creditors to obtain local counsel to participate in the case as an additional difficulty and expense that would be incurred by parties if venue was not transferred. *In re B.L. of Miami*, 294 B.R. at 334. In this case, the Southern District Bankruptcy Court has a permissive *pro hace vice* admission rule, permitting any lawyer admitted to practice in any state or federal court to be admitted *pro hace vice* without requiring local counsel. *See* Southern District Bankruptcy Court Local Rules 2090-1 effective August 2, 2004 www.nysb.uscourts.gov. This rule has substantially eased the burden and expense for out-of-state parties and counsel to appear and participate in cases in this court. Additionally, the Court has already approved telephone participation in hearings in this case by counsel who do not maintain their offices in New York City. *See* Pretrial Order # 1, ¶ 3 (ECF Doc. # 44). However, even with the availability of alternative appearances by telephone, many creditors will still want counsel to be physically present at hearings either because they are the moving parties for motions under consideration or for the more general benefits that come from attending hearings in person such as the ability to observe the court, witnesses and other parties in interest. As a result, despite technological advances there are limitations on the quality of participation for a large number of creditors located exclusively in California if they do not incur the additional expense of New York counsel or have their California counsel travel to New York for hearings.

In considering the remaining factors under the interest of justice prong, while the Debtor's selection of venue is accorded great weight it does not appear that the Debtor's interests will be harmed or that the estate will suffer a diminution in value if venue is transferred to the Eastern District of California. In this case, the Debtor's employees, including management that would be needed to testify, assets, and the Subsidiaries are located in California. Debtor's

professionals (lawyers, financial advisors and investment bankers) are also located in California

or Arizona.  The Creditors Committee supports transfer of the case to California, and the

Creditors Committee's counsel, Morrison & Foerster, LLP, has offices in New York and

California.  In addition, considering the jurisdictional issues of potential judgments and

subpoenas in this case, all parties would be subject to the jurisdiction of California courts by

virtue of either their domicile in the case of the trade creditors or sufficient contacts in the case of

the institutional investors that conduct business there on a regular basis.  As a result, while the

Debtor's selection is valid under § 1408 and accorded great weight, the overall circumstances of

the case show by a preponderance of the evidence that transfer of venue is in the interest of

justice in this case.  Indeed, the thin nexus of the Debtor to the Southern District of New York,

and the overwhelming contacts between the Debtor and Eastern District of California, combined

with no overriding factors making it substantially more likely that the Debtor's prospects for a

successful reorganization would be enhanced if this Court were to retain jurisdiction, raise

serious questions whether the Court would abuse its discretion if it denied the motion to transfer

venue in the interests of justice.

### 2.  Convenience of the Parties

Under the prong "convenience of the parties," the six factors most commonly analyzed

by bankruptcy courts under § 1412 are:

1. proximity of creditors of every kind to the court;
2. proximity of the debtor;
3. proximity of witnesses necessary to the administration of the estate;
4. location of the assets;
5. economic administration of the estate; and
6. necessity for ancillary administration if liquidation should result.

*In re B.L. of Miami,* 294 B.R. at 329 (citing *Consol. Equity Prop., Inc. v. Southmark, Corp.* (*In re*

*Consol. Equity Prop., Inc.)*, 136 B.R. 261, 266 (D. Nev. 1991); *CORCO,* 596 F.2d at 1247).  The

most weight is given to the promotion of the economic and efficient administration of the estate. This factor has already been discussed in connection with the interests of justice prong. *See In re Enron*, 274 B.R. at 343 n.10.

Consideration of the proximity and convenience of creditors must include the number of creditors as well as the amounts owed. *Id.* at 345. In this case the Debtor is a co-borrower or guarantor of loans from approximately ten large institutional national lenders representing over $200 million in debt. The remaining creditors in the Debtor's top thirty creditors list, save one, are located in California and represent over $12 million in debt. (ECF Doc. # 116.) Considering the number of creditors and the amounts owed, this factor does not favor changing venue unless consideration is given to the quality of participation available to the creditors. The largest bank creditors in this case are often participants in California cases and only Bank of New York, the indenture trustee, is headquartered in New York. (ECF Doc. # 114 at Exhibit 1) (showing majority of dollar amount of debt is based in Texas). A California venue would not be more inconvenient to these creditors as most would have to travel to appear in New York or California. However, the majority of trade creditors would not have to travel very far if venue was transferred to California. While the court has already provided for telephone participation at hearings, for parties who cannot travel to New York, or for whom travel is financially burdensome, the ability to advocate for them is impaired.

In *Enron*, the court also stressed the statutory role that the Creditors Committee fills as a fiduciary to creditors and as a representative body of the unsecured creditors. *In re Enron,* 274 B.R. at 345. In *Enron*, the Creditors Committee opposed the transfer of venue whereas in this case the Creditors Committee supports the transfer of venue. *Id.*; ECF Doc. # 130.

While the Debtor is incorporated in New York, all of its remaining employees, sole

shareholder, and the majority of its professionals are located in California. While the number of

hearings at which its employees may be required to testify – either called as witnesses by the

Debtor or by creditors – is uncertain, it will certainly be more convenient for them to appear in

Sacramento and compulsory process can also issue to require their appearance.[10]

While the *Enron* court characterized the physical location of the assets as one of the least

important factors in that case, *In re Enron*, 274 B.R. at 347-48, other courts have relied on it

more heavily. *In re B.L. of Miami*, 294 B.R. at 332. In *B.L. of Miami*, the court found that the

debtor, a nightclub in Florida, was better served if the court hearing the case was more likely to

have an "active familiarity with the community and the milieu in which the nightclub operated."

*In re B.L. of Miami*, 294 B.R. at 332. *Enron* was largely a "financial" case, where the physical

assets were divided amongst various locations and their location was therefore less important to

the restructuring than the center of the financial markets. *In re Enron*, 274 B.R. at 347-48. In

analyzing *Enron* and *In re B.L. of Miami*, it is apparent that the nature of the underlying

businesses was a major consideration in the venue decisions. Here, despite Debtor's efforts to fit

this case in *Enron's* "financial" box, the Debtor's real estate assets and the local or regional

business climate in which the Debtor and its Subsidiaries operated are the driving considerations

in this case. The Debtor's business did not operate on a global scale, as did Enron, and Debtor's

assets are not located in various locations but instead are mostly centralized in California.

The Court has already discussed the economic administration of the estate. *See In re

Enron*, 274 B.R. at 348; *see supra* at 14-15. In addition to those considerations, another factor

pointing to California venue is that the Debtor is already in the process of liquidating. (ECF

---

[10]    The importance of the availability of compulsory process cannot be underestimated in light of the Debtor's
substantial reduction in the number of employees. Former employees who worked for the Debtor or its Subsidiaries
in California are more likely to be subject to compulsory process if the case is pending in Sacramento.

Doc. # 150 at ¶ 8.)  Marketing and selling its California real estate assets can best be overseen by a California bankruptcy court with greater familiarity with the market.

As a result of the above and the totality of the circumstances in this case, the Court concludes that the Moving Parties have met their burden for transfer of the case under the convenience of the parties prong as well.

## CONCLUSION

The Moving Parties have shown by a preponderance of the evidence that the Court should order the transfer of venue of this case to the Eastern District of California in the interests of justice and for the convenience of the parties.  For the reasons stated, the motion is GRANTED.  The Clerk of the Court is directed to transfer this case to the United States District Court for the Eastern District of California, Sacramento Division.

**IT IS SO ORDERED.**

DATED:        January 14, 2008
              New York, New York


                         **/s/Martin Glenn**
                          MARTIN GLENN
                    United States Bankruptcy Judge